# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **MICHAEL W. ELKINS,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:09CV00025 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | Chief United States District Judge |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

*Allison Mullins, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Michael W. Elkins filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits pursuant to title XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401–433 (West 2003 & Supp. 2009). Jurisdiction of this court exists pursuant to 42 U.S.C.A.§ 405(g).

Elkins filed for benefits in January 2006, alleging disability beginning February 8, 2005, due to lower back pain, foot problems, acid reflux, irritable bowel syndrome, anxiety, and depression. His claim was denied initially and upon reconsideration. At his request, Elkins received a hearing before an administrative law judge ("ALJ"), during which a vocational expert and Elkins, represented by counsel, testified. The ALJ denied Elkin's claim and the Social Security Administration's Appeals Council denied Elkin's request for review of the ALJ's decision. Elkins then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.[1]

II

Elkins was thirty-three years old when he filed for disability, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(e) (2009). He completed one year of college and has worked as a roof bolter, a maintenance worker, and, most recently, a machine operator in a coal mine.

In February 2005, Elkins injured his back when a large rock fell on him while he worked in a coal mine. Immediately after the accident, Elkins sought medical

---

[1] While the plaintiff has requested oral argument, I find that the materials before the court are adequate and oral argument would not significantly aid the decisional process.

assistance. The doctor treating Elkins noted that Elkins had an abrasion in the sacrum area, but no significant swelling. Otherwise, Elkins appeared healthy.

When he returned to work the day after the accident, Elkins was placed on light duty work for two weeks. Elkins' employer returned him to light duty work in August 2005 after he complained about back pain. In January 2006, the coal mine fired Elkins because he left work mid-shift and refused to return.

In the summer of 2005, Elkins began complaining of back problems and pain in his feet. In addition, Elkins stated he suffered from depression and panic attacks. During the next several months at least three separate doctors examined and treated Elkins. One of these doctors, Neal Jewell, M.D., opined that Elkins had a left L4-5 herniated nucleus pulposus. Dr. Jewell also diagnosed Elkins with severe situational depression and post-traumatic stress syndrom due to the mine accident. Dr. Jewell did not think this condition was disabling because he opined that Elkins could work outside of the coal mines.

Elkins was also treated by Matthew W. Wood, Jr., M.D., a neurosurgeon. Dr. Wood, who reviewed the results of Elkins' second MRI, taken in January 2006, opined that Elkins had no significant disc protrusions and no significant musculoskeletal abnormalities. Dr. Wood stated that Elkins had "negative and facile straight leg raising [tests] without a hint of hamstring tightness. . . ." ( R. at 233.) Dr.

Wood opined that Elkins had good reflexes and his legs appeared "well-muscled" without "focal weakness or atrophy." (*Id*.) Dr. Wood concluded that Elkins' back problems were "benign" and that Elkins did not have "any impairments significant enough to warrant consideration of lifetime disability benefits. . . ." (*Id*.)

During the same time he saw Dr. Wood, Elkins was also treated by his primary care physician, Michael B. Ford, M.D. In November 2005, prior to Dr. Wood's final examination and the second MRI, Dr. Ford wrote that Elkins was "100% true in his complaint of pain." (R. at 339.) Dr. Ford opined that Elkins had a positive straight leg raising on the left-leg and that an X ray showed impingement of the L4-L5 vertebrae. Dr. Ford concluded that Elkins had a "neurological impingement" in his back. (*Id*.) In 2006, Dr. Ford completed several insurance forms on Elkins behalf and indicated that Elkins could not work in the coal mines and that Dr. Ford "expect[ed] it to be permanent." (R. at 352-360.)

At the referral of his attorney, Elkins was evaluated by a licensed psychologist. The psychologist opined that Elkins was capable of exercising appropriate self-care and control over his finances, but that Elkins suffered from clinical depression. The psychologist suggested Elkins seek help from a mental health professional.

The ALJ reviewed the hearing testimony and Elkins' medical records along with the findings of two state-agency reviewing physicians and two state-agency

reviewing psychologists. The ALJ found that Elkins had severe impairments of degenerative back disorder with chronic pain, depression, and irritable bowel syndrome. The ALJ concluded that Elkins could not perform any of his past jobs, but his impairments did not meet or exceed the Act's standards for a disability.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520(a)(4) (2009). If it is determined at any

point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity ("RFC"), which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.

It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Elkins asserts that the ALJ should have given controlling weight to the opinions of Dr. Ford , Elkins' primary care physician. Elkins also alleges that the ALJ failed to give "full consideration" to the conclusions drawn by the psychologist. (Pl.'s Mot. for Summ. J. 10.) I disagree with both assertions.

The ALJ must consider objective medical facts and the opinions of treating and examining medical professionals, which constitute a major part of the proof of disability cases. *McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2) (2009). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also* 20 C.F.R. 20 C.F.R. § 404.1527(d)(3) (2009).

Contrary to what Elkins asserts, federal regulations and case precedent do not state that an ALJ must give "controlling" weight to a treating physician's opinion.

Rather, the weight given to a treating physician's opinion depends upon the evidence and the ALJ's evaluation of this evidence. *Craig*, 76 F.3d at 590. In this case, the record demonstrates that the ALJ did not err by considering Dr. Ford's opinion and determining that it was inconsistent with other substantial evidence.

In addition, the record shows that Dr. Ford's conclusions about Elkins' work ability was unsubstantiated by clinical evidence. Dr. Ford stated that he believed Elkins suffered from a "neurological impingement," (R. at 338) which was painful and prevented Elkins from working in the coal mines, but did not prevent him from working entirely. (R. at 330.) Several months later, Dr. Ford stated Elkins' depression and back problems were disabling. Five other physicians opined, however, that Elkins did not suffer from a disabling physical or mental impairment.

The findings of Drs. Wood and Jewell, two specialists who treated Elkins between September 2005 and January 2006, constitute the most significant evidence supporting the ALJ's decision that Elkins could perform unskilled sedentary work.

Dr. Wood examined Elkins on several occasions and evaluated Elkins' spinal X rays and January 2006 MRI. Based upon this evidence, Dr. Wood opined that Elkins had no back abnormalities and that his alleged back pain was benign. Dr. Jewell, an orthopaedic surgeon who treated Elkins and examined Elkins' X rays and August 2005 MRI, concluded that Elkins was capable of working with "certain

restrictions." (R. at 207.) Unlike Dr. Ford , neither physician thought Elkins was disabled.

The ALJ did not err in rejecting Dr. Ford's conclusions as to Elkins' mental abilities. Dr. Ford has no expertise in mental health and thus, the ALJ may give Dr. Ford's opinions less weight than the opinions of the two state-agency mental health specialists who opined that Elkins could work. Second, contrary to Dr. Ford's opinion, Elkins' daily living activities, such as caring for himself and his children, demonstrated that Elkins had the ability to perform unskilled sedentary labor.

Thus, substantial evidence supports the ALJ's decision that Dr. Ford's conclusions as to Elkins' mental health should not be given significant weight.

Elkins' second assertion is unfounded because substantial evidence demonstrates that the ALJ did not err by rejecting Lanthorn's opinion. Lanthorn's evaluation was based upon a single consultation with Elkins, which occurred after Elkins' attorney referred him to Lanthorn. Because Lanthorn was not a treating physician, the ALJ was not required to give significant weight to the finding. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2009). Even if the ALJ had accepted Lanthorn's conclusions, the psychologist's findings do not show that Elkins alleged depression met or exceeded the requirements for an affective mental disorder under

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B) (2009). Therefore, substantial evidence supports the ALJ's conclusion.

The plaintiff argues that I should consider the medical records from Eric D. Moffet, M.D., a psychiatrist who treated Elkins between June 2007 and February 2008. A district court may order additional evidence to be taken before the Commissioner only when there has been a showing that there is "new evidence," which is material and good cause exists for the party's failure to incorporate the evidence into the record in a prior proceeding. *See* 42 U.S.C.A. § 405(g). This additional evidence must relate to the period on or before the date of the ALJ's decision. *See Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991)(en banc). Under this standard, I cannot consider Dr. Moffet's evaluations of Elkins because they occurred several months after the ALJ's April 2007 decision.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

ENTER: March 2, 2010

 /S/ JAMES P. JONES  
 Chief United States District Judge